**FILED**
FEB 19 2008
Clerk, U.S. District and
Bankruptcy Courts

UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Criminal Number: 08-0012 (RMU) |
| ) | |
| vs. ) | Count One: 18 U.S.C. § 201(b)(2) |
| ) | and Criminal Forfeiture |
| JAMES R. FISHER, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## STATEMENT OF OFFENSE

The United States of America, by and through its undersigned attorneys, Daniel A. Petalas and Richard B. Evans, Trial Attorneys, United States Department of Justice, Criminal Division, Public Integrity Section, and the Defendant, JAMES R. FISHER, (hereinafter "the Defendant") personally and through his undersigned counsel, Cynthia Katkish, Esq., hereby stipulate to the following facts pursuant to United States Sentencing Guidelines § 6A1.1 and Rule 32(C)(1) of the Federal Rules of Criminal Procedure. The parties stipulate and agree that these facts do not encompass all of the facts that would have been proven at trial.

1. At all times relevant to this Information, the Defendant was employed by the United States General Services Administration ("GSA") as a Planner and Estimator. As a Planner and Estimator, among other things, FISHER coordinated functions relative to production, control, planning, estimating, contracting, and scheduling work on United States government facilities for his field office (hereinafter, the "Center"). FISHER advised GSA contracting officers to whom he reported about the status of projects under his supervision, including contract progress, project needs, and contractor performance. FISHER created statements of work and purchase orders for work that was authorized by the Center or the client agency. FISHER also made recommendations to GSA contracting officers to whom he reported

about which companies would be suited for the award of particular contracts, as well as the cost of completing projects. Finally, FISHER performed work inspections, evaluated contract performance, and recommended acceptance of services and payment to contracting companies based on his review of that work.

2.   The Contracting Company is a company operated by the Contractor that provides maintenance and related services at U.S. Government facilities. At all times relevant to the Information, the Contracting Company was a party to term contracts with GSA for work to be completed at U.S. government facilities located in the District of Columbia including the Center, which was served by FISHER in his official position as a GSA Planner and Estimator.

3.   Beginning in or around 2000, the Center awarded the Contracting Company various maintenance jobs at U.S. government facilities located in the District of Columbia pursuant to the Contracting Company's GSA term contracts. In those instances, FISHER reviewed the scopes of work and estimated the cost of particular jobs. FISHER also supervised the Contracting Company's performance of these contracts in his official capacity as a GSA Planner and Estimator. FISHER also certified when the work was complete, which was required for the Contractor and the Contracting Company to be paid.

4.   Between approximately in or about 2003 and October 2006, in the District of Columbia and elsewhere, FISHER and the Contractor agreed that the Contractor would pay FISHER $500 per week in return for receiving work orders for the Contracting Company under its GSA term contract. Thereafter, the Contractor began to pay cash to FISHER at various times, although not on a regular weekly basis as they had originally agreed. Through approximately the end of October 2006, the Contractor paid FISHER a total of no less than $11,000 in cash pursuant to their agreement.

5. During this period, FISHER also directed the Contractor to provide renovation and maintenance work on FISHER's personal residence in Suitland, Maryland at no cost to FISHER. These renovations included the installation of new kitchen cabinets, at a cost to the Contractor of $2,500; the enclosure of a rear porch, at a cost to the Contractor of $3,000; and the replacement of exterior vinyl siding, valued at approximately $7,000. Additionally, FISHER asked the Contractor to send employees to FISHER's house to perform lawn maintenance during this period, which the Contractor did numerous times for a total cost to the Contractor of approximately $2,000. All of this work was completed at no cost to FISHER and pursuant to their agreement.

6. On or about November 7, 2006, December 15, 2006, and February 27, 2007, the Contractor met FISHER at FISHER's residence in Suitland, Maryland to make additional payments to FISHER in accordance with their agreement. At each of the three meetings, the Contractor made a cash payment to FISHER in the amount of $1,500, for a total of an additional $4,500 in cash pursuant to their agreement.

7. On or about May 22, 2007, the Contractor met FISHER at his residence in Suitland, Maryland. During that meeting, the Contractor gave FISHER $10,000 in cash pursuant to their agreement. The Contractor asked FISHER if the Construction Company would continue to receive more work as a result of paying the $10,000. FISHER confirmed that it would. FISHER then asked the Contractor to send workers to his residence the following week to make repairs to the exterior of the house, to create a garden, and to schedule grass cutting every other week. In accordance with FISHER's requests, the Contractor sent employees to FISHER's residence in Suitland, Maryland to perform the grass cutting at no cost to FISHER, but did not provide the other services.

8. Pursuant to their agreement, in or about July 2007, FISHER asked the Contractor to send workers to Delaware to install new kitchen cabinets, a floor, carpeting, and to make other miscellaneous repairs at a personal residence FISHER owned in Delaware, at no cost to FISHER. The Contractor agreed to provide those services, but never did so.

9. On or about July 17, 2007, FISHER and the Contractor discussed making an additional $10,000 cash payment under their agreement. FISHER instructed the Contractor to provide the money in two $5,000 increments, and thereafter to continue his future payments at the previously-agreed rate of $500 per week. None of these payments were made to FISHER.

10. In accordance with their agreement, until approximately July 17, 2007, FISHER continued to recommend the Contractor and the Contracting Company for additional purchase orders for work at facilities FISHER served. FISHER supervised the Contracting Company's performance of those purchase orders in his official capacity as a GSA Planner and Estimator, and approved the paperwork necessary for the Contractor and the Contracting Company to be paid.

11. On or about October 25, 2007, FISHER was arrested by federal law enforcement agents. The agents subsequently interviewed FISHER, and he admitted that he sought and received money from the Contractor, and that he did so intending to be influenced in his official responsibilities. The total stipulated value of the money and other things of value actually received by FISHER from the Contractor in return for being influenced was approximately $40,000.

***

I declare under penalty of perjury under the laws of the United States of America, including 28 U.S.C. § 1726, that the foregoing is true and correct.

Date: 1/21/2008

JAMES R. FISHER
Defendant

**APPROVED**:

WILLIAM M. WELCH II
Chief, Public Integrity Section

By: 
DANIEL A. PETALAS
RICHARD B. EVANS
Trial Attorneys
United States Department of Justice
Criminal Division
Public Integrity Section
1400 New York Avenue, N.W., 12th Fl.
Washington, DC 20005
Telephone:   (202) 514-1412
Facsimile:   (202) 514-3003

CYNTHIA KATKISH, ESQ.
Law Offices of Cynthia Katkish
601 Pennsylvania Avenue, NW
Suite 900 South Building
Washington, DC 20004
Telephone:   (202) 997-1386
Facsimile:   (202) 639-2000
*Counsel for James R. Fisher*