**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA**

**v.**                                          **CRIMINAL NO.  08cr0012-01 (RMU)**

**JAMES R. FISHER**

**SENTENCING MEMORANDUM**

Mr. Fisher respectfully submits this memorandum to assist the Court in determining a sentence that is "sufficient but not greater than necessary" to achieve the purposes of punishment as required by 18 U.S.C. § 3553(a) in light of *United States v Booker*, 125 S. Ct. 738 (2005).

In fashioning a sentence, the Court must consider the factors set forth in 18 U.S.C. § 3553(a) in fashioning the appropriate sentence. These factors are (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed–(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the advisory guideline range; (5) any pertinent policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims of the offense.

The sentencing guideline range in this case is 24-30 months.  However, it is only one factor to be considered in determining a sentence.  *United States v. Booker*, 125 S. Ct. at 764-65.  In considering the Section 3553(a) factors, the sentencing guidelines are to be given no more or less weight than any other factor.

In  *Rita v. U.S*,  127 S.Ct. 2456 (June 21, 2007), the Court stated that  "...the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines should apply."

On December 10, 2007, the Supreme Court held in <u>Gall *v.* United States</u>, 128 S.Ct. 586 (2007) that courts of appeals must review all sentences, whether within, just outside, or substantially outside the guidelines range under a deferential abuse-of-discretion standard.

1. While the extent of the difference between a particular sentence and the recommended Guidelines range is relevant, courts of appeals must review all sentences—whether inside, just outside, or significantly outside the Guidelines range—under a deferential abuse-of-discretion standard.

(a) Because the Guidelines are now advisory, appellate review of sentencing decisions is limited to determining whether they are "reasonable," *United States* v. *Booker*, 543 U. S. 220, and an abuse-of-discretion standard applies to appellate review of sentencing decisions. A district judge must consider the extent of any departure from the Guidelines and must explain the appropriateness of an unusually lenient or harsh sentence with sufficient justifications. An appellate court may take the degree of variance into account and consider the extent of a deviation from the Guidelines, but it may not require "extraordinary" circumstances or employ a rigid mathematical formula using a departure's percentage as the standard for determining the strength of the justification required for a specific sentence. Such approaches come too close to creating an impermissible unreasonableness presumption for sentences outside the Guidelines range. The mathematical approach also suffers from infirmities of application. And both approaches reflect a practice of applying a heightened standard of review to sentences outside the Guidelines range, which is inconsistent with the rule that the abuse-of-discretion standard applies to appellate review of all sentencing decisions—whether inside or outside that range.

(b) A district court should begin by correctly calculating the applicable Guidelines range. The Guidelines are the starting point and initial benchmark but are not the only consideration. After permitting both parties to argue for a particular sentence, the judge should consider all of 18 U. S. C. §3553(a)'s factors to determine whether they support either party's proposal. He may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented. If he decides on an outside-the-Guidelines sentence, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variation. He must adequately explain the

chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. In reviewing the sentence, the appellate court must first ensure that the district court made no significant procedural errors and then consider the sentence's substantive reasonableness under an abuse-of-discretion standard, taking into account the totality of the circumstances, including the extent of a variance from the Guidelines range, but must give due deference to the district court's decision that the §3553(a) factors justify the variance. That the appellate court might have reasonably reached a different conclusion does not justify reversal.

  2. On abuse-of-discretion review, the Eighth Circuit failed to give due deference to the District Court's reasoned and reasonable sentencing decision. Since the District Court committed no procedural error, the only question for the Circuit was whether the sentence was reasonable, *i.e.,* whether the District Judge abused his discretion in determining that the §3553(a) factors supported the sentence and justified a substantial deviation from the Guidelines range. The Circuit gave virtually no deference to the District Court's decision that the variance was justified. The Circuit clearly disagreed with the District Court's decision, but it was not for the Circuit to decide *de novo* whether the justification for a variance is sufficient or the sentence reasonable.

In *U.S. v. Husein*  478 F.3d 318 (6th Cir. 2007), the Court stated that "The plain import of *Booker* is that a 1-day, below-the-Guidelines sentence, no less than a 7,300-day, above-the-Guidelines sentence, is now a viable sentence for a district court to impose so long as it is authorized by statute and reasonable within the meaning of 18 U.S.C. § 3553(a)."

Under the post-*Booker* advisory guideline regime, district courts are not only permitted, but required, to consider "the history and characteristics of the defendant. *U.S. v. White,*  506 F.3d 635 (8th Cir. 2007).

"Nor should the Guidelines factor be given more or less weight than any other. While the Guidelines are to be respectfully considered, they are one factor among the § 3553(a) factors that are to be taken into account in arriving at an appropriate sentence." *U.S. v. Carty,*  2008 WL 763770 (9th Cir. March 24, 2008) (*en banc*).

In his dissenting opinion in *United States v. Sedore*, 512 F.3d 819 (6th Cir. 2008), Merritt, C.J. said that,  "This case is one more example of the continuing problem, the problem of guidelineism, or 'guidelinitis,' the inability of most federal courts to break their habit of mechanically relying just on the guidelines alone."

## POST-*BOOKER* SENTENCING CONSIDERATIONS

Mr. Fisher respectfully requests that the Court take into consideration the following mitigating factors when fashioning a sentence that is sufficient but not greater than necessary to achieve the purposes of punishment as required by 18 U.S.C. § 3553(a) in light of *United States v Booker*, 125 S. Ct. 738 (2005).

## 1.  Military Service.   United States Marine Corps.

Mr. Fisher is a decorated wartime veteran.  He served ten (10) years and twenty-nine (29) days in the Marine Corps and received the Purple Heart Medal for wounds received in combat.  Twenty-seven (27) months of those ten years were served in Vietnam.  In March 1965, he was sent to Da-Nang, South Vietnam with the 9th Marine Amphibious Brigade, which was the first Marine ground force deployed to Vietnam. There he served  until June 1965, at which time he was assigned to a Marine base in Okinawa, Japan.  In July 1965, his unit, the 3rd  Engineer Battalion, 3rd Marine Division, was deployed to Thi Bui, South Vietnam, where he served until October 1965.  In October 1965 until October 1967, he was assigned to Marine Corps bases and air stations in Quantico, Virginia, Okinawa, Japan, and Yuma, Arizona.

In October 1967, he was deployed  to Chu Lai, South Vietnam where he joined the Forced Logistics Support Group-Bravo.  At Chu Lai, Mr. Fisher and his unit were attacked with mortars and rockets at least two or three times a month.  During one of these attacks, Mr. Fisher received shrapnel wounds from a 122-millimeter rocket.  The Marine Corps awarded Mr. Fisher the Purple Heart as a result of his wounds.  Mr. Fisher also was awarded a Combat Action Ribbon during this period for directly engaging the enemy with rifle fire.  Mr. Fisher continued to serve in the combat zone until April 1969.

From April 1969 to November 1970, Mr. Fisher was assigned to the Marine Range Company, in Camp Fuji, Japan, and from November 1970 to January 1971 to Paris Island, South Carolina. Upon leaving Paris Island, he was assigned to Base Maintenance at Quantico, Virginia until his discharge December 1 1971.

## 2. Medals, Stars, Ribbons and Commendations. United States Marine Corps.

Mr. Fisher received the following medals, stars, ribbons and commendations during his military service with the Marine Corps:

<u>Purple Heart</u>. Mr. Fisher was awarded the Purple Heart Medal by order of the President of the United States as a result of receiving wounds in combat at Chu Lai, South Vietnam. Mr. Fisher came under attack by 122-millimeter rockets and mortar fire. Mortar rounds are shells that explode as small bombs. He was hit by shrapnel from a 122 MM rocket that lodged in his back, legs, and arms. After medical treatment and fifteen days of recovery, he returned to combat.

<u>Combat Action Ribbon</u>. The Combat Action Ribbon is not awarded to everybody in Vietnam but is only awarded by the Marine Corps to those who have fired a weapon as the enemy is firing at them. Mr. Fisher was fired at on approximately 12 different occasions in the course of 18 months. Enemy troops fired AK47 rifles at him, and he returned fire with an M-16 rifle.

<u>Presidential Unit Citation</u>. Mr. Fisher received this award by order of the President of the United States for combat support of ground forces in Central Vietnam. Each member of the Forced Logistics Support Group-Bravo received this award.

<u>Vietnam Campaign Medal with Device</u>. This medal was awarded to Mr. Fisher by the Marine Corps for his service in Vietnam from 1965 to 1969.

<u>Vietnam Service Medal with 3 Stars</u>. This medal was awarded to Mr. Fisher by the Marine Corps for service in four separate campaigns in Vietnam. A campaign is an operation against enemy forces.

<u>National Defense Service Medal</u>. This medal was awarded to Mr. Fisher by the Department of Defense for service in the United States Armed Forces during wartime.

<u>Armed Forces Expeditionary Medal</u>. This medal was awarded to Mr. Fisher for being a member of the 9th Marine Amphibious Brigade serving in Da-Nang, South Vietnam.

<u>Good Conduct with Star</u>. This metal with star was awarded to Mr. Fisher by the Marine Corps for four years of service with good conduct. The star is awarded in lieu of a

second good conduct award.

Mr. Fisher's combat action in Vietnam and his total exemplary military service

warrant a sentence of probation.

**3.  Military Service.   United States Naval Reserve.**

Mr. Fisher enlisted in the Naval Reserve on April 7, 1979 and was honorably

Discharged for retirement on December 31, 1997.  Mr. Fisher's total service with the

Naval Reserve was 18 years, 8 months, 24 days.

**4.  Medals, Ribbons, and Commendations.  United States Naval Reserve.**

Mr. Fisher received the following medals, stars and commendations during his

military service with the Naval Reserve:

<u>Bronze Star Awarded in Lieu of Second National Defense Medal</u>.  Mr. Fisher was
awarded a Bronze Star in lieu of his second National Defense Medal for service in the
Naval Reserve during the Desert Storm Operations.

<u>Naval and Marine Corps Overseas Medal with Three Stars.</u>  This medal was awarded to
Mr. Fisher for four years of service with good conduct.  The three bronze stars were
awarded for four additional years of good conduct each.

<u>Navy Achievement Medal with Two Gold Stars,</u>   Mr. Fisher received his first Navy
Achievement Medal for professional achievement in the superior performance of his
duties while serving as the Leading Petty Officer of the Public Works Department of
Naval Reserve Naval Station Keflavik 1066 NAF Washington, D.C.

Mr. Fisher received his second Navy Achievement Medal for professional achievement in
the superior performance of his duties while serving as the Leading Chief Petty Officer of
the Training Department of Naval Reserve Naval Station Keflavik 1066 NAF
Washington, D.C.

Mr. Fisher received his third Navy Achievement Medal for professional achievement in
the superior performance of his duties while serving as the Department Head of the
Public Works Department of Naval Reserve Naval Station Keflavik 1066 NAF
Washington, D.C.

The Navy Achievement Medal is awarded by the Secretary of the Navy.

<u>Armed Forces Reserve Medal with Hour Glass.</u>  This Medal was awarded to Mr. Fisher

for completing ten years of honorable service as a member of the Reserve Component of the Armed Forces.

<u>Naval Reserve Meritorious Service Medal with Three Stars.</u>  This Medal was awarded to Mr. Fisher for completing four consecutive years as a member of the Naval Reserve.  A satisfactory year contains 48 drills and a 14-day annual training. The three stars are awarded for additional service of four years per star.

<u>Meritorious Unit Commendation</u>.  This Medal was awarded to Mr. Fisher for exceptional performance of duties during unit active duty for training between 8 July 1979 and 18 July 1980, which contributed significantly to the readiness of Naval Station Keflavik, Iceland.

Mr. Fisher requests that the Court consider his exemplary military service when fashioning a sufficient but not greater than necessary sentence.

Even pre-*Booker*, courts could depart downward for extraordinary military service.

In *U.S. v. Pipich*, 688 F. Supp. 191 (D.Md. 1988), where the defendant was convicted of mail theft, the court found that the defendant's extraordinary military record warranted departure to probation.  In that case, the defendant was a Marine and served in combat in Vietnam for one year.  He received Air Medal awards and was awarded the Purple Heart.  He was also the recipient of several Vietnamese awards.

As the defendant in *Pipich*, Mr. Fisher is a decorated U.S. Marine Corps veteran who served combat in Vietnam and received the Purple Heart, in addition to numerous other medals, awards, stars and commendations.

In *U.S. v. Claudio, CR. No. 9244* (D.Ore. October 4, 1993),  Judge Owen Panner departed downward because of the defendant's "extraordinary" military service. Similarly, in *U.S. v. Leigh*, Cr 91-96-FR (D.Ore.), Judge Helen Frye granted a substantial downward departure in a bank robbery case based in part on prior military service.

Mr. Fisher respectfully submits that his exemplary military service of 28 years, 9 months, 24 days warrants a sentence of probation.

**5. Good Employment History.**

Mr. Fisher has an exemplary employment history. In high school, he planted, cut, stripped and hung tobacco and corn on a farm in Capital Heights Maryland and was paid $5.00 a day. Five months after graduating from high school, he enlisted in the Marine Corps and was honorably discharged after more than ten (10) years of decorated service.

During his service in the Marine Corps, he was stationed in Da-Nang, Thi Bui, and Chu Lai, South Vietnam and in Okinawa, Japan. At Chu Lai, Mr. Fisher received shrapnel wounds from a 122-millimeter rocket. The Marine Corps awarded Mr. Fisher the Purple Heart Medal as a result of his injuries. Mr. Fisher was also awarded a Combat Action Ribbon during this period for directly engaging the enemy with rifle fire. Mr. Fisher continued to serve in the combat zone until April 1969, and was honorably discharged on 1 December 1971.

After his discharge from the Marine Corps in December 1971, Mr. Fisher worked for the National Plumbing and Heating Company as a plumbers' helper and later for Capital Boiler as a pipe fitters' helper. After Capital Boiler, he worked as a plumber for James Boyer Plumbing and Heating and a year or so later as a plumber foreman for Acme Plumbing and Heating until August 1978.

On August 30, 1978, Mr. Fisher began his career with the General Services Administration. He retired on January 2, 2008 after twenty-nine and a half years (29 ½) years of government service.

Mr. Fisher enlisted in the Naval Reserve on April 7, 1979 and was honorably discharged for retirement on December 31, 1997. His service with the Naval Reserve totaled 18 years, 8 months, 24 days. Mr. Fisher's military service, Marine Corps and

Naval Reserve, totaled 28 years, 9 months, 24 days.

The court's sentence of probation and 6 months home confinement was found to be reasonable in *U.S. v. Fuson*, (6th Cir. Feb. 8, 2007) (unpub) 2007 WL 414265, where the defendant was convicted of felon in possession and guidelines were 24-30 months. The defendant's record was unblemished for the past seven years and his "working and supporting his family [although a disfavored factor under the guideline] was entitled to some weight".

Likewise, in *U.S v. Baker*,  445 F.3d 987, 992 (7th Cir. 2006), a distribution of pornography case where below guideline sentence (110 to 78) affirmed because defendant's "lack of a criminal history, his relatively young age, his religious background and his history of both employment and higher education...coincides with the sentencing factors specified in § 3553."

Also in *U.S.  v. Thompson*, 74 F.Supp.2d 69 (D.Mass. 1999), a pre-Booker case, a departure from 87 to 60 months for a drug charge in part because "not only did defendant exhibit a sustained commitment to his family dating back to the instant he became a father, he consistently worked to provide for them." In *U.S.  v. Jones*, 158 F.3d 492 (10th Cir. 1998), where defendant pled guilty to possession of a firearm by a prohibited person, the district court did not abuse its discretion in departing downward by three levels when, as one of eleven factors, it considered the defendant's work history.  In *U.S.  v. Higgins*, 967 F.2d 841 (3d Cir. 1992), young age and stable employment will justify a downward departure if "extraordinary"; remanded to see if judge realized he had power; and in *U.S. v. Alba*, 933 F.2d 1117 (2d Cir. 1991), a long-standing employment history at two jobs was sufficient. The same result in  *U.S.  v. Jagmohan*, 909 F.2d 61 (2d Cir. 1990), where

exceptional employment history and nature of the crime warranted a lower guideline range and in *U.S. v. Big Crow*, 898 F.2d 1326, 1331-32 (8th Cir. 1990), where an excellent employment record was considered in departing downward.

**6. Awards, Certificates, Letters of Appreciation. Employment. General Services Agency (GSA).**

Mr. Fisher received twenty-one letters of commendations and awards during his service with the General Services Administration (GSA). Copies are attached to this memorandum. They include:

a. A letter from The White House presented to Mr. Fisher in May 1990. The last paragraph reads:

> The State Dinner, [honoring the President of the Union of Soviet Socialist Republics, Mikhail Gorbachev and his wife] which could have been a disaster, was a huge success thanks in part to the knowledge and efforts of Mr. Fisher.

The main kitchen at the White house experienced a major plumbing problem during final preparations for the State Dinner. Mr. Fisher was called by his supervisor after the plumbing shop had closed. Upon arrival, he "wasted no time in assessing the problem."

b. Assistant Buildings Manager Morris praises Mr. Fisher in his July 30, 1990 letter: "It is perfectly clear that if you had not taken the initiative to assure job completion, severe damage could have been done to one of our nations historical structures."

c. On August 10, 1989, Mr. Fisher received a commendation from the Blair House, by Samuel Castlman. The second paragraph reads:

> Each of the above men performed their jobs with all the skill and competence expected of the best in their trade. However, I would like to single out Mr. Fisher and Mr. Ferguson who stayed long past their normal quitting time and took the initiative to improvise on finding parts to that the job would be competed that same evening. By noon the next day one would not have suspected that 24 hours earlier there had been such a disaster. Unfortunately, this type of dedication in today's workplace is more and more rare.

d. On January 6, 1989, Mr. fisher received a letter addressed to him and signed by President Reagan. In the second paragraph, the President writes:

> For the past eight years, I've been a firsthand witness to the seemingly
> limitless array of duties GSA staff carry out in the White house complex.
> You have been at the ready at all hours of the day and night to ensure
> the successful completion of the multiple missions of the modern Presidency.

e.   In his letter of Oct. 28, 1986, buildings manager Payne praises Mr. Fisher: "Without your untiring support and dedication to duty, the completion of this project could not have been possible."

 f.   On November 15, 1985, Mr. fisher was awarded $100 in recognition of his performance.

g.   On April 30,1984, Assistant Regional Administrator presented to Mr. Fisher a cash award of $50 for effecting improvement in the department's operations, specifically improved safety working conditions.

h.   In his letter of Feb. 25, 1983, building manager Respass writes:  "Your unselfish attitude by responding immediately to emergency work demonstrates your dedication to duty and loyalty to GSA."

i.   In his letter of October 2, 1980, buildings manager Charles Respass writes: "[I]t is most gratifying to see such excellent work and in this case it is well deserving of a commendation."

j.   Buildings manager Armstrong in his Sept. 30, 1980 letter expresses his "appreciation for the fine response you made to our appeal for additional manpower to complete a critical project."

k.   On June 2, 2981, Mr. Fisher received a Suggestion Award Certificate in Official Recognition and with Appreciation for the Contribution of a Beneficial Idea which has Improved Operations.

l.   He received four Performance Awards in June 1993, 1990, 1988 and 1984.

m.   He received five citations for Outstanding Attendance in 1991, 1987, 1985, 1983, and 1982

## 7. Education And Vocational Training.  Military.

Mr. Fisher received his high-school diploma in June 1961 from Suitland Senior

High in Suitland, Maryland.  Five months later, he enlisted in the Marine Corps and

received the following training and certificates during his 28 years 9 months 24 days

military career:

1. 6/13/1962.  Certificate. Refrigeration and Air Conditioning Mechanic. Marine Corps Engineer Schools at Courthouse Bay, Camp Lejeune, N.C.   Four-month training program.

2. 6/3/1963.  Certificate. Water Supply Mechanic.  Marine Institute, Washington D.C. Four-month training program.

3. 2/13/1965.  Certificate.  Non-Commissioned Officer Leadership Course.  Third Marine Division Schools.  One-month training program.

4. 1/22/70.  Certificate.  Operations Against Guerilla Units.  (Infantry tactics and training.) Marine Corps Institute, Washington, D.C.   Two-week training.

5. 5/25/1983.  Certificate.  Dept. of the Navy.  Public Works Training Center. Supervision and Management for Navy Civilian Personnel.

6. 11/18/1983.   Maintenance Inspector Training.  Department of Navy. Public Works Training Center.

7. 2/28/1986.  Certificate.  Instructor Basic Course. Teacher training.  One-month program. Naval Air Facility. Washington, D.C.

8. 2/2/1990.  Certificate.  Leadership and Management Education and Training for Chief Petty Officer.  Naval Amphibious School.

10.  6/9/1979  Military Requirements for Petty Officer Three and Two

11.  6/9/1979  Military Requirements for Petty Officer One and Chief

12.  9/10/1979  Utilities man One and Chief

13.  9/10/1979 Utilities man Three and Two

14.  12/6/1979 Builder One and Chief (Carpentry)

15.  12/6/1979 Electricity Part I (Electrician)

16.  2/5/1980 Construction Electrician

17.  2/5/1980  Blueprint Reading and Sketching

18.  7/15/1980 Builder Three and Two (Carpentry)

19.  7/15/1980 Tools and Their Uses

20. 9/12/1980 Construction man

21. 12/12/1980 Mathematics Part I

22. 12/18/1983 Seabee Combat Handbook

23. 1/04/1984 Navy Supply System

24. 1/14/1984 Engineering Administration

25. 2/14/1984 Naval Orientation

26. 4/11/1984 Boiler Technician

27. 9/11/1984 Refrigeration and Air Conditioning

28. 6/17/1986 Intro. to 3-M system (Computer supply system)

29. 4/29/1987 Watch Officer  (Supervision)

30. 4/21/1989 Navy Regulations

The above-listed courses (except for refrigeration and air conditioning) were not required for Mr. Fisher's positions in the Marine Corps or the Naval Reserve but were taken by him voluntarily to further his training and education.  Mr. Fisher completed each course in less than three months, although each had a one-year completion date.

**8.  Education and Vocational Training GSA.**

Mr. Fisher received many training certificates during his career with GSA, which include:  Special Workloads Task Force, Asbestos Hazard Abatement and Protection, Asbestos Awareness Courses, Client Relations and Hazard Communications.

**9.  First Time Offender.**

Mr. Fisher is a first-time offender with no criminal record, no juvenile record, no prior arrests, and no prior convictions.  He is a decorated war veteran with a solid employment record, and but for this offense, has led a law-abiding life.  Indeed, he is no

threat to the public.  The guideline sentence in this case does not  "… reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense."  28 U.S.C. § 994(j).  A sentence of imprisonment is greater than necessary to satisfy the purposes of sentencing.

In *U.S. v. Paul* 2007 WL 2384234 (9th Cir. Aug. 17, 2007) (unpub.), a guideline sentence of 16 months (high end) for taking government money was unreasonable in part because the defendant was "a first-time offender with absolutely no criminal record whatsoever."

The court in *U.S. v. McGee*, 479 F.Supp.2d 910 (E.D. Wisc. 2007) sentenced the defendant to one year and one day and not to the guideline range of 21-27 months for distributing heroin in part because he was a first offender.

Testimony of Pat Nolan, Vice President of Prison Fellowship The Joint Economic Committee of the U.S. Congress "Mass Incarceration in the United States: At What Cost?"  October 4, 2007 (found at

http://sentencing.typepad.com/sentencing_law_and_policy/2007/10/more-on-the-jec.html  ("most inmates do not leave prison transformed into law-abiding citizens. In fact, the very skills inmates develop to survive inside prison make them anti-social when they are released... Certainly we need prisons to separate violent and dangerous people from the rest of society. But given the overcrowding and violence in our prisons, why on earth would we put people convicted of non-violent crimes in prison? Prisons are for people we are afraid of, but our sentencing laws have filled them with people we are merely angry at.  Changing our sentences so that low risk offenders are punished in the

community under strict supervision would reduce overcrowding in prisons and help control violence. It would hold low-risk offenders accountable without exposing them to the violence and the great difficulties of transition back to the community after their sentence."

See Concession by Solicitor General before the Supreme Court in oral argument on Feb. 20, 2007 in *Rita v. U.S.* . at transcript page 34-35.  Under Booker, "a judge does have a certain amount of freedom in an advisory guidelines system to disagree with what the Sentencing Commission has found."

Probation was found to be reasonable for a defendant convicted of possession of child pornography in *U.S. v Polito*, (5th Cir. Jan. 31, 2007 No. 06-30133) 2007 WL 313463  (unpub.)  Although the guidelines were 27-33 months, district court found probation reasonable in part because defendant's conduct in the four years since the crime—receiving mental health treatment, maintaining employment,  law abiding life— "made him atypical of many convicted of possessing child pornography."

Mr. Fisher requests that he serve his punishment in the community in house arrest with community service, a steep fine, forfeiture of property, and court supervision.

## 10.  Length Of Time Until First Crime.

Departure is warranted because guidelines fail to consider the length of time the defendant refrains from commission of first crime.  *U.S.  v. Ward*, 814 F.Supp.  23 (E.D.Va. 1993); *U.S. v. Collington*, 461 F.3d 805 (6th Cir. 2006).  In *U.S. v. Smith* (4th Cir. April 23, 2008), 2008 WL 1816564  (unpub.), a child pornography case where the guidelines were 78-97 months, a sentence of 24 months was not an abuse of discretion. The district court noted defendant's age, 64, and that he had avoided violations of the law

"up until this point in his life."  Mr. Fisher lived for sixty years without ever being

arrested or charged with a crime, and during that time, he received numerous military and

civilian honors and awards.

## 11.  Good Deeds.

Mr. Fisher fought beside his fellow soldiers in combat during the Vietnam war,

fighting for his country and saving lives.  Indeed, there is no greater good a man or a

woman can perform other than combat duty during a war defending his/her country.

Mr. Fisher was not drafted into the Marines; he volunteered.  Moreover, he

reenlisted in the Marines and in the Naval Reserve (three times) during his military

career.

Many other good deeds are described in the letters of commendation awarded to

Mr. Fisher during his career with GSA.  Copies of the letters and awards are attached to

this memorandum.  A few include

A letter from The White House presented to Mr. Fisher in May 1990.  It reads in
part,  "The State Dinner, [honoring  the President of the Union of Soviet Socialist
Republics, Mikhail Gorbachev and his wife] which could have been a disaster, was a
huge success thanks in part to the knowledge and efforts of Mr. Fisher."

The main kitchen at the White house experienced a major plumbing problem during

final preparations for the State Dinner.  Mr. Fisher was called by his supervisor after the

plumbing shop had closed.  Upon arrival, he "wasted no time in assessing the problem."

A letter written on July 30, 1990 letter by Assistant Buildings Manager Morris in
which he praises Mr. Fishe,:  "It is perfectly clear that if you had not taken the initiative
to assure job completion, severe damage could have been done to one of our nations
historical structures."

A commendation written on August 10, 1989 and received from the Blair House,
Samuel Castlman.  The second paragraph reads:

Each of the above men performed their jobs with all the skill and competence

expected of the best in their trade.  However, I would like to single out Mr. Fisher and Mr. Ferguson who stayed long past their normal quitting time and took the initiative to improvise on finding parts to that the job would be competed that same evening. By noon the next day one would not have suspected that 24 hours earlier there had been such a disaster.  Unfortunately, this type of dedication in today's workplace is more and more rare.

On January 6, 1989, Mr. Fisher received a letter addressed to him and signed by President Reagan.  In the second paragraph, the President writes:

For the past eight years, I've been a firsthand witness to the seemingly limitless array of duties GSA staff carry out in the White house complex. You have been at the ready at all hours of the day and night to ensure the successful completion of the multiple missions of the modern Presidency.

## 12.  Health.

Mr. Fisher is in bad health.  Incarceration would jeopardize his life and health because the Bureau of Prisons may not be able to provide adequate care.  Currently, he is being treated for hypertension, coronary artery disease, hypcalipideuia, and peripageral vascular disease with intermittent clandication.  He has blockage in his two main arteries, one in each leg, with 50% blood flow in each leg.  He is prescribed  the following medications: lopressor, zantac, zocor, ecotrin aspirin.  Medical records dated December 21, 2007 indicate significant narrowing of both common iliacs and complete occlusion of the left SFA-C.T.

On May 1, 2008, Mr. Fisher under went an angioplasty to his right abdominal area and bifurcation to the area of his right leg. The treatment allowed the artery to open to approximately 80%.  Continued use of his medications should allow the artery to remain open.  Mr. Fisher 's prognosis for the near future includes an attempted angioplasty to his left leg.  Mr. Fisher continues to suffer from Peripheral Vascular Disease, Hypertension, Coronary Artery Disease.

Heart disease runs in Mr. Fisher's family and caused the early deaths of his siblings

and parents.  His sister Catherine died of heart failure at forty-seven (47), his brother

Ernie at forty-eight (48), his father at age of fifty (50), and his mother at seventy-five

(75). His two remaining sisters Anne (82) and Pat (75) and his brother George (63) also

suffer from heart disease.

Courts have granted probation to defendants because of poor health.

The court granted a non-guideline sentence of probation in  *U.S. v. Seiber,* 2005

WL 1801614 (E.D. Tenn. Jul 29, 2005) (unpub.) due to poor health.

In *U.S. v. Pineyro***,** 372 F.Supp.2d 133 (D.Mass. 2005) the court sentenced the

defendant to time served, 15 months, below the 46-57 months guideline range because of

needed medical care.

Probation granted in *U.S.  v. Rioux*, 97 F.3d 648 (2d Cir. 1996) based on

defendant's health problems – severe kidney disease and good acts – charitable fund-

raising.

In *U.S. v. Pasquantino*  2007 WL 1149917, 12 (4th Cir. 2007) (unpub.), where the

defendant was convicted of wire fraud,  cerebrovascular disease, strokes and other serious

ailments justified a substantial reduction of the advisory guideline range.

In *U.S. v. Spigner*  416 F.3d 708, 712 (8th Cir.  2005), the case was remanded

because after *Booker*, § 3553(a) requires that a court consider the need to provide the

proper medical care when fashioning a sentence.

The defendant in *U.S. v. Hein*,  463 F.Supp.2d 940 (E.D. Wisc. 2006) was convicted

of felon in possession of ammunition. The court found that the 12-18 month guideline

range was greater than necessary to satisfy the purposes of sentencing in part because the

"defendant was in extremely poor health" and "a prison term for one in his condition

would be extremely difficult… and the "Bureau of Prisons would be strained in dealing with him."

In *U.S. v. Gray*,  453 F.3d 1323  (11th Cir. 2006), the court found that a 72-month sentence (low end guideline 151 months) was reasonable because of the defendant's age, minimal record and  medical condition. The district court considered all factors under §3335(a).

In *U.S. v. Carmona-Rodriguez*, 2005 WL 840464, 4  (S.D.N.Y., 4/11/2005) (unpub.) the court sentenced below the advisory guidelines in part because of needed medical care. The defendant was fifty-five (55) years old with no criminal history, pled guilty to distributing drugs, and suffered from high blood pressure, diabetes, anxiety, and depression.

In *United States v. Ribot*, 97 F.Supp.2d 74, 84 (D.Mass. 1999) the court departed downward seven levels in order to preserve the medical treatment plan.

In  *U.S.  v. Gigante*, 989 F.Supp. 436 (E.D.N.Y. 1998), a mob boss was sentenced to 144 months and not 262 months because of his age (69) and bad heart, even though he had a violent and vicious history of crime.

> …management problems with elderly inmates, ... are intensified in the prison setting and include: vulnerability to abuse and predation, difficulty in establishing social relationships with younger inmates, need for special physical accommodations in a relatively inflexible physical environment.  *Correctional Health Care, Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates*. U.S. Department of Justice, National Institute of Corrections, 2004 edition, pp 9 and 10. The report notes on page 10 that first-time offenders are "easy prey for more experienced predatory inmates."

**13.  Home confinement is equally efficient and less costly than prison.  USSG §5H1.1.**

Mr. Fisher's chronic health problems and needed medical treatment make imprisonment difficult. His conditions would only get worse if incarcerated.

Courts have granted a sentence of probation when the defendant had serious medical needs.

In *U.S. v. Wadena* 470 F.3d 735 (8th Cir. 2006), where the 67 year old defendant was convicted of mail fraud and the guidelines were 18-24 months, the court found that the district court properly imposed probation. The defendant suffered from hypertension, hearing loss, cataracts, type II diabetes, and kidney disease. "The district court properly found that probation was sufficient but not greater than necessary to impress upon [Wadena] the seriousness of the offense. The sentence promotes respect for the law, provides just punishment for the offense, and affords adequate deterrence as well as providing Wadena with needed medical care."

The court granted a non-guideline sentence of probation in *U.S. v. Seiber,* 2005 WL 1801614 (E.D. Tenn. Jul 29, 2005) (unpub.) due to poor health.

Courts prior to *Booker* granted departures to probation because of a defendant's poor health and needed medical treatment. USSG §5H1.4 provides that "an extraordinary physical impairment may be a reason to impose a sentence below the guideline range; *e.g.*, in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment."

In *U.S. v. Willis*, 322 F. Supp. 2d 76, (D. Mass. 2004), a tax evasion case, a sentence of probation with six months home confinement was granted to a 69 year old because of his serious medical conditions. In response to the government's argument that the BOP could care for defendant, the court said "I have never had a case before me in

which the Bureau of Prisons suggested that it did not have the capacity to care for a defendant."

In *U.S. v. Gee*, 226 F.3d 885 (7th Cir. 2000) a downward departure under §5H1.4 based on health was not an abuse of discretion where the judge concluded that "imprisonment posed a substantial risk to [defendant's] life."

In *U.S. v. Hildebrand*, 152 F.3d 756 (8th Cir. 1998) the court affirmed downward departure to probation for a 70-year old from range of 51-63 months with 6 months in home confinement. The defendant was convicted of mail fraud and had life-threatening health conditions.

In a bankruptcy fraud case, *U.S. v. Baron*, 914 F.Supp. 660, 662-665 (D.Mass. 1995), the court departed from 27-33 months to probation and home detention for a 76-year-old defendant with health problems that would worsen if incarcerated.

The court found probation proper in *U.S. v. Greenwood*, 928 F.2d 645 (4th Cir. 1991) where the defendant, who was convicted of felon in possession of a firearm, was being treated by the Veterans Administration hospital and incarceration would jeopardize his continued medical care. See also *U.S. v. Lara*, 905 F.2d 599, 605 (2d Cir. 1990).

In *U.S. v. Martin*, 363 F.3d 25, 50 (1st Cir. 2004), a tax fraud case, the court approved a sentence below the guideline range (3 levels) where the defendant suffered serious medical conditions: "...we are not convinced that the BOP can adequately provide for Martin's medical needs during an extended prison term" and "There is a high probability that lengthy incarceration will shorten Martin's life span."

In this case, home detention will guarantee Mr. Fisher's continued medical care.

**14. Age.**

Mr. Fisher is sixty-four years old and suffers serious medical problems.  Home confinement is warranted in this case because of his age and poor health.

USSG §5H1.1 states: "Age (including youth) is not ordinarily relevant in determining whether a departure is warranted. Age may be a reason to depart downward in a case in which the defendant is elderly and infirm and where a form of punishment such as home confinement might be equally efficient as and less costly than incarceration."  In this case, home confinement is equally efficient and less costly than imprisonment.  Defendant is 64 years old, prone to heart attacks, and under the care of doctors.

USSG §5H1.4 states, in part: "Physical condition or appearance, including physique, is not ordinarily relevant in determining whether a departure may be warranted. However, an extraordinary physical impairment may be a reason to depart downward: e.g., in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment."

**15.   The Defendant is Older and Presents a Low Risk of Recidivism.**

In *U.S. v. Wadena,*  470 F.3d 735 (8th Cir.  2006), the court imposed probation in part because of the defendant's age (67) and recent health deterioration reduced the risk of his re-offending.  The defendant was convicted of mail fraud, and the guidelines were 18-24 months.

In *U.S. v. Lucania*  379 F.Supp.2d 288, 297 (E.D.N.Y. 2005), the court stated that "Post-*Booker* courts have noted that recidivism is markedly lower for older defendants*."*

The defendant in *U.S. v. Carmona-Rodriguez*  2005 WL 840464, 4 (S.D.N.Y. April 11, 2005) (unpub.), who was 55 years old and pled guilty to distribution of drugs, was sentenced to a below guideline range in part because of the low probability that the defendant would re-offend.

Defendants "over the age of forty... exhibit markedly lower rates of recidivism in comparison to younger defendants.  *Measuring Recidivism: The Criminal History Computation Of The Federal Sentencing Guidelines,* at 12, 28 (2004)

_www.ussc.gov/publicat/Recidivism_General.pdf_.  (Recidivism rates decline relatively

consistently as age increases," from 35.5% under age 21 to 9.5% over 50.)

The court in *U.S. v. Nellum* ,  2005 WL 300073  (N.D. Ind. Feb. 3, 2005) (unpub.)

granted a non-guideline sentence and noted that the Guidelines are "…an imperfect

measure of how well a sentence protects the public from further crimes" of the

defendant."

The likelihood of recidivism by a 65 year old is very low.  *United States Sentencing*

*Commission Report* released in May 2004 (located at

http://www.ussc.gov/publicat/Recidivism-General.pdf)

In *U.S. v. Smith*, 445 F.3d 1, 5 (1st Cir. 2006), the court held that district court's

consideration of defendant's age was appropriate and noted that although the guidelines

discourage and forbid consideration of  particular factors, that "does not automatically

make [the factor] irrelevant when a court is weighing the statutory factors apart from the

guidelines."

In *U.S. v. Hein* 463 F.Supp.2d 940 (E.D. Wisc. 2006), the court found that prison

was unnecessary and that the 12-18 month guideline range was greater than necessary to

satisfy the purposes of sentencing.  Because of the defendant's minimal prior record, law-

abiding life for the past ten years, and diminished physical capacity, the court found that

the defendant, who was convicted of being felon in possession of ammunition, was very

unlikely to re-offend.

**16.  Incarceration Not Necessary to Protect the Public.**

In *U.S. v. Baker*, 2007 WL 2693818 (6th Cir. Sept. 17, 2007), defendant pled guilty to possession of unregistered firearm. Probation with one-year house arrest was proper, in part, because incarceration was not necessary to protect the public.

Mr. Fisher led a law-abiding life for more than sixty years before committing this offense. He has no criminal record, no arrest record, no juvenile record, no prior assault charges, no drug use, and no alcohol addiction. He served ten years in the Marine Corps and 18 years, 8 months, and 24 days in the Naval Reserve. Never did he receive anything but commendations, awards, ribbons, and medals. During his twenty-nine and a half years (29 ½) years of government service with the GSA, he was awarded twenty-one commendations and awards and sixteen training certificates. During his military career, he was awarded thirty-three Department of Navy training certificates, eighteen Naval Reserve military medals, honors and commendations, and eleven medals, awards, ribbons, and commendations by the Marine Corps, including the Purple Heart.

Mr. Fisher's law-abiding life and exemplary conduct up to the time of this offense, coupled with the other factors listed in this memorandum, clearly show that incarceration is not necessary to protect the public from Mr. Fisher. Government funds are better used protecting the public from violent offenders, rapists, murderers, and drug traffickers.

**17. Defendant's Forfeiture Payment Of $40,000.**

Although Mr. Fisher agreed to forfeit $40,000 in certified funds on the day of sentencing, he has paid the money as of the filing of this memorandum. On May 5, 2008, he delivered a cashiers check to the assistant assigned to this case. Mr. Fisher requests that the Court consider his lump-sum forfeiture payment, which was paid in advance of sentencing.

The following cases refer to restitution payments and not to the forfeiture of personal property.  However, defendant submits that the cases support his request for a sentence of probation.

Probation was granted in *U.S. v. Kim*, 364 F.3d 1235 (11th Cir. 2004) to husband and wife after they pled guilty to conspiracy to defraud the United States and paid $280,000.  The downward departure from 24 months to probation and home detention was justified where the defendants used their life savings and borrowed an enormous amount of money to pay restitution.  In *U.S. v. Paul* 2007 WL 2384234 (9th Cir. Aug. 17, 2007) (unpub.), a guideline sentence of 16 months (high end) for misappropriation of government funds was found to be unreasonably high in part because the defendant was "a first-time offender with absolutely no criminal record whatsoever and promptly returned all of the funds to the school district.

Even where defendant does not accept responsibility, his full restitution early on in the case and his efforts to recover funds warrant a downward departure to 91 months from 235 to 144 months under §5K2.0.  *U.S.  v. Bennett*, 9 F.Supp.2d 513 (E.D.Pa. 1998).

Restitution payments may constitute 'exceptional circumstances' that justify a downward departure.  *U.S. v. DeMonte*, 25 F.3d 343, 346 (6th Cir. 1994).

In *U.S.  v. Davis* 797 F. Supp. 672 (D.C.N.Ind. 1992), an eight-level downward departure was proper where the defendant made $775,000 restitution voluntarily.

The court in *U.S. v. Oligmueller*, 198F.3d669,672 (8th Cir. 1999) affirmed a downward departure in part because  "[w]e have previously held that cases can fall outside the heartland when there are extraordinary efforts at restitution."

**18.  Early Plea.**

Mr. Fisher was arrested at his home on October 26, 2007. The following day he was presented before Magistrate Judge Robinson and released on personal recognizance.

Within days of his release, Mr. Fisher sought to enter an early plea and pay restitution. Counsel met and spoke with the assistant U.S. attorneys on numerous occasions in an attempt to dispose of the case quickly. On January 21, 2008, the parties signed a plea agreement, and Mr. Fisher pled guilty on February 19, 2008. Mr. Fisher waived his right to indictment by a grand jury, his right to a preliminary hearing, and his rights under the Speedy Trial Act. His early plea and waivers conserved judicial and Department of Justice resources.

**19. Cooperation with Authorities.**

The FBI arrested Mr. Fisher at his home on October 25, 2007. Within two or three hours of his arrest, Mr. Fisher was taken to an FBI field office where he was interviewed by FBI and GSA agents. During this time, he voluntarily waived his *Miranda* rights and admitted his involvement in the offense.

Mr. Fisher wanted to cooperate with the authorities and offer additional information about criminal activity on his job, but he knew nothing about the crimes of others. Therefore, he could not provide substantial assistance to authorities in the investigation or prosecution of others. "We agree that in formulating a reasonable sentence, a sentencing judge must consider … the contention that a defendant made efforts to cooperate…" U.S. v. Fernandez  443 F.3d 19 (2nd Cir.  2006). When departing downward, the court must evaluate a defendant's cooperation on an individualized basis and not engage in mechanical reduction of only 3-levels. *U.S.  v. King*, 53 F.3d 589, 590-92 (3d Cir. 1995).

**20.  Life of Public Service.**

Defendant's life of public service, both military and civilian, extends over forty years. He has lost his job, and the plea agreement prohibits him from working for or conducting business with the United States government for three (3) years from the date of sentencing.

The guidelines do not take into consideration loss of job or a life of public service. Mr. Fisher respectfully submits that these mitigating factors should be considered by the Court when fashioning a sentence.

The defendant was convicted of mail fraud in *U.S. v. Samaras*, 390 F.Supp.2d 805, 809 (E.D.Wis., 2005). A below-guideline sentence was warranted in part because "as a consequence of his conviction and sentence, defendant lost a good public sector job, another factor not considered by the guidelines."

The guideline range in this case, just one of the seven (7) factors to be considered in imposing a sentence pursuant to § 3553, is 24 to 30 months. This range is excessive and greater than necessary to meet the goals of punishment.

In *U.S. v. Libby,* President Bush found that Scooter Libby's sentence of 30 months was excessive. Libby was convicted by a jury of perjury and obstruction of justice after putting the court and government through a long and costly trial. The President however commuted his 30-month guideline sentence to zero (0) months because 30 months was "excessive" and because the conviction itself is "harsh punishment" where "the reputation he gained through his years of public service and professional work in the legal community is forever damaged [,] his wife and young children have also suffered immensely, [where], he will remain on probation, [and where]the significant fines imposed by the judge will remain in effect, [and where] the consequences of his felony

conviction on his former life as a lawyer, public servant and private citizen will be long-lasting."[1]

Mr. Fisher also lost his job and the good reputation of his colleagues, family, and fellow veterans. Like Mr. Libby's family, Mr. Fisher's family has suffered embarrassment and shame. Mr. Fisher respectfully requests that he too be placed on probation and ordered to pay a significant fine.

**21. Family Support Serves Rehabilitation.**

Mr. Fisher's strong family support, in addition to the other factors described in this memorandum, assures the Court that he will not re-offend. Mr. Fisher is very close to his three living siblings: Ann age 81, Pat age 75 and George age 63. The family is supportive of each other and provides financial and emotional help during difficult times. In *U.S. v. Wachowiak*, 412 F.Supp.2d 958 (E.D. Wisc. 2006) *aff'd* 496 F.3d 744 (7th Cir. 2007), a below-guideline sentence was imposed in part because the guidelines failed to account for the defendant's strong family support.

**22. Good Behavior While on Release.**

Mr. Fisher continues to be compliant with all conditions of his release. The court released him on October 26, 2007 on personal recognizance with the condition that he report weekly to Pretrial Services by telephone. He has never missed a call since his release in October.

Additionally, Mr. Fisher fully cooperated with the presentence report writer and was extremely forthcoming and helpful. He provided copies of bank records, school

---

[1] Found at http://www.whitehouse.gov/news/releases/2007/07/20070702-3.html.

records, military records, employment records, training records, medical records, bills and any other record that was asked of him.  Mr. Fisher has also paid the court costs that the Court has ordered him to pay.

## 23.  Mercy Warrants Probation.

Mr. Fisher asks for mercy in his case and a sentence of probation.

Testimony Of Justice Anthony Kennedy before the Senate Judiciary Committee February 14, 2007 in response to Senator Whitehouse:  "Our sentences are too long, our sentences are too severe, our sentences are too harsh...[and because there are so few pardons] there is no compassion in the system.  There's no mercy in the system.", *video link* accessible at Professor Berman's Sentencing Law and Policy Blog of Feb. 15, 2007.

Justice Kennedy 's ABA speech of 2003:  "A country which is secure in its institutions, confident in its laws should not be ashamed of the concept of mercy.  As the greatest of poets has said 'mercy is the mightiest in the mightiest.  It becomes the throned monarch better than his crown.'"

James Q. Whitman. *Harsh Justice*  (Oxford Press 2003) paperback ed. at 223 n. 72 "the makers of sentencing guidelines succeeded only in contributing to the making of a law of punishment that shows obstinately little concern for the personhood of offenders...a law that tends to treat offenders as something closer to animals than humans, and that has correspondingly sought, more and more frequently, simply to lock them away."

Adam Liptak.  Inmate Count in U.S. Dwarfs Other Nations.  New York Times Article, April 23, 2008, front page, "The United States has less than 5 percent of the world's population. But it has almost a quarter of the world's prisoners.  Indeed, the United States leads the world in producing prisoners, a reflection of a relatively recent and now entirely distinctive American approach to crime and punishment. Americans are locked up for crimes — from writing bad checks to using drugs — that would rarely produce prison sentences in other countries. And in particular they are kept incarcerated far longer than prisoners in other nations."

## 24.  A Court's Sense Of What Is Just and Fair.

"Although the sentencing judge is obliged to consider all of the sentencing factors outlined in section 3553(a), the judge is not prohibited from including in that consideration the judge's own sense of what is a fair and just sentence under all the circumstances."  *U.S. v. Jones* 460 F.3d 191 (2nd Cir. 2006).

**25.  The Good in the Defendant's Life must be Weighed against the bad.**

During Mr. Fisher's lifetime, he has been awarded twenty-one commendations and awards by the General Services Administration (GSA), sixteen training certificates by GSA,  thirty-three Department of Navy training certificates, eighteen Naval Reserve military medals, honors and commendations and eleven medals, awards, ribbons, and commendations by the Marine Corps, including the Purple Heart.  Defendant's law-abiding life and exemplary conduct up to the time of this offense, coupled with the other factors listed in this memorandum, warrant a period of probation with home confinement.

**CONCLUSION**

The Sentencing Reform Act provides that the courts consider the nature and circumstances of the offense and the history and characteristics of the defendant in determining the particular sentence to be imposed.  18 U.S.C. § 3553(a)(1).  No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.  18 U.S.C. § 3661.

Mr. Fisher respectfully requests that the Court take into consideration his exemplary and unblemished life and impose a sentence of probation with six (6) months home detention, forfeiture in the amount of $40,000 (which has been paid), a $10,000 fine to paid within the first two years of a three-year supervised probationary period, and 250 hours of community service.  Defendant's good character during his military service and his unblemished employment history up to the date of this offense show that his criminal behavior is truly aberrant and that he poses no risk of recidivism.

Mr. Fisher recognizes the seriousness of his offense and that he must be punished. He has lost his good reputation, the respect of his family, friends and other veterans, his right to vote, his right to possess a firearm, a clean criminal record, retirement assets and his livelihood. A fine in an amount of $10,000 to be paid on an installment schedule reflects the seriousness of the offense, promotes respect for the law, provides just punishment and affords adequate deterrence. USSG §5E1.2 (d)(1). Moreover, the proposed sentence avoids the huge expense needed to incarcerate an individual and amply deters others from committing the same offense. A steep fine combined with home confinement, forfeiture, 250 hours of community service, years of court supervision, and the collateral consequences he suffers, is sufficient punishment. The proposed sentence clearly is punitive.

"Home detention and probation can be severe punishments...hugely restrictive of liberty, highly effective in the determent of crime and amply retributive." A defendant is "subjected … to DNA collection, home intrusion and an utter lack of autonomy... he [is] restricted to within 10 feet of his residence. Probation officers enter his home to check the electronic monitoring system installed there. The electronic monitoring prevents [him] from reaching and roaming his property. He [is] permitted to leave his property only on a handful of occasions for church, medical appointments, legal consultations and his sister's funeral. On all those occasions, [he is] subject to reporting requirements, and his movement … closely monitored and recorded with GPS equipment. His punishment is far from an act of leniency, and its characterization as such deprives sentencing courts of a valuable and effective form of punishment." *U.S. v. Coughlin*, 2008 WL 313099 (W.D. Ark. Feb. 1, 2008).

Mr. Fisher is a nonviolent first-time offender with a sterling military and civilian record. Incarceration is not required and would violate the mandate of 18 U.S.C. § 3553(a) that requires the court to impose a sentence that is sufficient, but not greater than necessary to provide just punishment.

Respectfully submitted,

/s/
_____
Cynthia Katkish
Bar ID No. 418876
601 Pennsylvania Ave NW
Suite 900-S # 221
Washington, D.C. 20004
202-997-1386 fax 202-639-2000
ckatkish1@comcast.net

THIS IS AN IMPORTANT RECORD

ARMED FORCES OF THE UNITED STATES
REPORT OF TRANSFER OR DISCHARGE

| 1. LAST NAME—FIRST NAME—MIDDLE NAME | | 2. SERVICE NUMBER | | 3. SOCIAL SECURITY NUMBER |
|---|---|---|---|---|
| FISHER, James Richard | | 198 83 64 | | 214 42 4889 |

| 4. DEPARTMENT, COMPONENT AND BRANCH OR CLASS | | 5a. GRADE, RATE OR RANK | 5b. PAY GRADE | 6. DATE OF RANK DAY MONTH YEAR |
|---|---|---|---|---|
| USMC | | SGT. | E-5 | 1 Dec 67 |

| 7. U.S. CITIZEN | 8. PLACE OF BIRTH (City and State or Country) | | | 9. DATE OF BIRTH DAY MONTH YEAR |
|---|---|---|---|---|
| ☒ YES ☐ NO | Washington, D. C. | | | 7 Oct 43 |

TRANSFER OR DISCHARGE DATA

| 11a. TYPE OF TRANSFER OR DISCHARGE | b. STATION OR INSTALLATION AT WHICH EFFECTED |
|---|---|
| Discharge | ServCo, ServBn, MCB, QuantVa. 22134 |

| c. REASON AND AUTHORITY  202-Expiration of Enlistment | | 12. EFFECTIVE DATE DAY MONTH YEAR |
|---|---|---|
| Par 6009 MARCORSEPMAN | | 2 Dec 71 |

| 13a. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | 13b. CHARACTER OF SERVICE | 13c. REENLISTMENT CODE |
|---|---|---|
| ServCo, ServBn, MCB, QuantVa. 22134 | HONORABLE | DD-256 MC |

| 14. DISTRICT, AREA COMMAND OR CORPS TO WHICH RESERVIST TRANSFERRED | | RE-3C |
|---|---|---|
| N/A | | |

SERVICE DATA

| 16. TERMINAL DATE OF RESERVE/UNTRG OBLIGATION DAY MONTH YEAR | 17. CURRENT ACTIVE SERVICE OTHER THAN BY INDUCTION SOURCE OF ENTRY: | 18. TERM OF SERVICE (Years) | DATE OF ENTRY DAY MONTH YEAR |
|---|---|---|---|
| N/A | ☐ ENLISTED (First Enlistment) ☒ ENLISTED (Prior Service) ☐ REENLISTED ☐ OTHER | 3 | 3 Dec 65 |

| 18. PRIOR REGULAR ENLISTMENTS | 19. GRADE, RATE OR RANK AT TIME OF ENTRY INTO CURRENT ACTIVE SERVICE | 20. PLACE OF ENTRY INTO CURRENT ACTIVE SERVICE (City and State) |
|---|---|---|
| One | Lance Corporal E-3 | Quantico, Virginia |

| 21. HOME OF RECORD AT TIME OF ENTRY INTO ACTIVE SERVICE (Street, RFD, City, County, State and ZIP Code) | 22. | STATEMENT OF SERVICE | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| 6902 Apt 44B, George Palmer Highway Washington, 27, D. C. | CREDITABLE FOR BASIC PAY PURPOSES | a. (1) NET SERVICE THIS PERIOD | 05 | 11 | 2 |
| | | (2) OTHER SERVICE | 04 | 01 | 2 |
| | | (3) TOTAL (Line (1) plus Line (2)) | 10 | 00 | 2 |
| 23a. SPECIALTY NUMBER & TITLE  1161: Refrigeration Repairman | b. RELATED CIVILIAN OCCUPATION AND D.O.T. NUMBER  637.281 Refrigeration Mechanic | b. TOTAL ACTIVE SERVICE | 10 | 00 | 2 |
| | | c. FOREIGN AND/OR SEA SERVICE | 04 | 03 | 2 |

24. DECORATIONS, MEDALS, BADGES, COMMENDATIONS, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED
Vietnam Campaign Medal with device; Good Conduct Medal with one star; Vietnam Service Medal with three stars; Combat Action Ribbon; Purple Heart; Presidential Unit Citation; Expert Badge Rifle M-14; Expert Badge Pistol .45 Cal.

25. EDUCATION AND TRAINING COMPLETED
4 Yrs. High School Graduate (Academic): 1961
1st School Company, Camp Lejeune, North Carolina (Refrigeration Mechanic): 1962
FMF Schools, NCO Leadership School: 1965
1st School Company, Camp Lejeune, North Carolina (Mine Warfare): 1962
MCI, Washington, D. C. (Water Supply): 1963
USAFI, Madison, Wisconsin (Refrigeration Specialist, Vol. 1-5 & Vol. 6): 1965

PAY DATA / SERVICE DATA

| 26a. NON-PAY PERIODS/TIME LOST (Preceding Two Years) | b. DAYS ACCRUED LEAVE PAID | 27a. INSURANCE IN FORCE (NSLI or USGLI) | b. AMOUNT OF ALLOTMENT | c. MONTH ALLOTMENT DISCONTINUED |
|---|---|---|---|---|
| NONE | 23 Days | ☒ YES ☐ NO | $ N/A | N/A |
| | c. VA CLAIM NUMBER  N/A | 28. SERVICEMEN'S GROUP LIFE INSURANCE COVERAGE | | |
| | | ☒ ☐ $15,000.00 | | |

REMARKS

30. REMARKS

CERTIFIED TO BE A TRUE COPY

Good Conduct Medal period commences: 690523

Elects mileage to: Washington, D. C. (Home)   [signature] 88APR7

AUTHENTICATION

| 31. PERMANENT ADDRESS FOR MAILING PURPOSES AFTER TRANSFER OR DISCHARGE (Street, RFD, City, County, State and ZIP Code) | 32. SIGNATURE OF PERSON BEING TRANSFERRED OR DISCHARGED |
|---|---|
| 2402 Rochelle Ave., Apt. 1724, District Heights, Maryland 20028 | James R. Fisher |
| 33. TYPED NAME, GRADE, AND TITLE OF AUTHORIZING OFFICER | 34. SIGNATURE OF OFFICER AUTHORIZED TO SIGN |
| W. B. CLARY, CAPT., USMC, CO | W. B. Clary |

DD FORM 214 MC (1900) 1 JUL 66   PREVIOUS EDITIONS OF ARMED FORCES OF THE UNITED STATES REPORT OF TRANSFER OR DISCHARGE — THIS FORM ARE OBSOLETE   S/N 0101-888-4601

CERTIFIED TO BE A TRUE COPY

| | | | | |
|---|---|---|---|---|
| 1. LAST NAME—FIRST NAME—MIDDLE NAME | | 2. SERVICE NUMBER | 3. GRADE, RATE OR RANK | 3a. DATE OF RANK (Day, Month) |
| FISHER, James Richard | | 01988354 | 1Cpl E-3 | 1Apr63 |

**PERSONAL DATA**

| 4. DEPARTMENT, COMPONENT AND BRANCH OR CLASS | 5. PLACE OF BIRTH (City and State or Country) | 6. DATE OF BIRTH | DAY | MONTH | YEAR |
|---|---|---|---|---|---|
| U. S. Marine Corps | Washington, D. C. | | 07 | Nov | 43 |

| 7a. RACE | b. SEX | 8. COLOR HAIR | c. COLOR EYES | d. HEIGHT | e. WEIGHT | 8. U.S. CITIZEN | 9. MARITAL STATUS |
|---|---|---|---|---|---|---|---|
| N/A | Male | Red | Brown | 68" | 145 | ☒YES ☐NO | Single |

| 10a. HIGHEST CIVILIAN EDUCATION LEVEL ATTAINED | b. MAJOR COURSE OR FIELD |
|---|---|
| High School-4 | Academic |

**TRANSFER OR DISCHARGE DATA**

| 11a. TYPE OF TRANSFER OR DISCHARGE | b. STATION OR INSTALLATION AT WHICH EFFECTED | | | | |
|---|---|---|---|---|---|
| Discharge | MCS, Quantico, Virginia | EFFECTIVE DATE | DAY 02 | MONTH Dec | YEAR 65 |

| 12. LAST DUTY ASSIGNMENT AND MAJOR COMMAND | 13a. CHARACTER OF SERVICE | b. TYPE OF CERTIFICATE ISSUED |
|---|---|---|
| ServCo, ServBn, MCS, Quantico, Virginia | HONORABLE | DD 256 MC |

**SELECTIVE SERVICE DATA**

| 14. SELECTIVE SERVICE NUMBER | 15. SELECTIVE SERVICE LOCAL BOARD NUMBER, CITY, COUNTY AND STATE | 16. DATE INDUCTED | | |
|---|---|---|---|---|
| Not Available | Not Available | DAY | MONTH N/A | YEAR |

| 17. DISTRICT OR AREA COMMAND TO WHICH RESERVIST TRANSFERRED |
|---|
| N/A |

| 18. TERMINAL DATE OF RESERVE OBLIGATION | | | 19. CURRENT ACTIVE SERVICE OTHER THAN BY INDUCTION a. SOURCE OF ENTRY | | b. TERM OF SERVICE (Years) | 20. DATE OF ENTRY | | |
|---|---|---|---|---|---|---|---|---|
| DAY 01 | MONTH Nov | YEAR 67 | ☒ENLISTED(First Enlistment) ☐ENLISTED(Prior Service) ☐REENLISTED ☐OTHER | | 4 | DAY 02 | MONTH Nov | YEAR 61 |

| 20. PRIOR REGULAR ENLISTMENTS | 21. GRADE, RATE OR RANK AT TIME OF ENTRY INTO CURRENT ACTIVE SERVICE | 22. PLACE OF ENTRY INTO CURRENT ACTIVE SERVICE (City and State) |
|---|---|---|
| None | Pvt E-1 | Baltimore, Maryland |

**SERVICE DATA**

| 23. HOME OF RECORD AT TIME OF ENTRY INTO ACTIVE SERVICE (Street, RFD, City, County and State) | 24. STATEMENT OF SERVICE | | YEARS | MONTHS | DAYS |
|---|---|---|---|---|---|
| 6902 Apt 44E, George Palmer Highway Washington 27, D. C. | CREDITABLE FOR BASIC PAY PURPOSES | (1) NET SERVICE THIS PERIOD | 04 | 01 | 00 |
| | | (2) OTHER SERVICE | 00 | 00 | 00 |
| 25a. SPECIALTY NUMBER AND TITLE 1161 | | (3) TOTAL (Line (1) + line (2)) | 04 | 01 | 00 |
| Refer. Mechanic | b. RELATED CIVILIAN OCCUPATION AND D.O.T. NUMBER Refrigeration Mechanic 5-83.941 | c. TOTAL ACTIVE SERVICE | 04 | 01 | 00 |
| | | d. FOREIGN AND/OR SEA SERVICE | 01 | 01 | 11 |

| 26. DECORATIONS, MEDALS, BADGES, COMMENDATIONS, CITATIONS AND CAMPAIGN RIBBONS AWARDED OR AUTHORIZED |
|---|
| Good Conduct Medal, First Award; Marksman Badge Rifle M-14 Armed Forces Expeditionary Medal |

| 27. WOUNDS RECEIVED AS A RESULT OF ACTION WITH ENEMY FORCES (Place and date, if known) |
|---|
| None |

| 28. SERVICE SCHOOLS OR COLLEGES, COLLEGE TRAINING COURSES AND/OR POST-GRADUATE COURSES SUCCESSFULLY COMPLETED | | | 29. OTHER SERVICE TRAINING COURSES SUCCESSFULLY COMPLETED MCI: |
|---|---|---|---|
| SCHOOL OR COURSE | DATES (From - To) | MAJOR COURSES | |
| 1stScolCo,MCES,MCB,CLNC | 1962 (10wks) | Refrigeration Mechanic | Water Supply 11.4 Grade B 1963, |
| 3dMarDiv(Rein)F:F Schools | 1965 (5wks) | NCO Leadership School | Refrigeration |
| 1stScolCo,MCES,MCB,CLNC | 1962 (1wk) | Mine Warfare | Specialist Volume 1-6 (114Frs1)1965 |

**VA DATA**

| 30a. GOVERNMENT LIFE INSURANCE IN FORCE | b. AMOUNT OF ALLOTMENT | c. MONTH ALLOTMENT DISCONTINUED |
|---|---|---|
| ☐YES ☒NO | N/A | N/A |

| 31a. VA BENEFITS PREVIOUSLY APPLIED FOR (Specify type) | b. | c. VA CLAIM NUMBER N/A |
|---|---|---|
| N/A | | |

**AUTHENTICATION**

| 32. REMARKS |
|---|
| Reenlisted in the U. S. Marine Corps No lost time current enlistment Good Conduct Medal Period commences 2Nov64 Lump sum leave settlement paid for 3 days Up periods in an excess leave status Social Security No. 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 |

| 33. PERMANENT ADDRESS FOR MAILING PURPOSES AFTER TRANSFER OR DISCHARGE (Street, RFD, City, County and State) | 34. SIGNATURE OF PERSON BEING TRANSFERRED OR DISCHARGED |
|---|---|
| P.O. Box 43, Herald Harbor, Maryland | X James K. Fisher |
| 35. TYPED NAME, GRADE AND TITLE OF AUTHORIZING OFFICER | 36. SIGNATURE OF OFFICER AUTHORIZED TO SIGN |
| D. L. YOUNG, Capt, USMC, CC | X |

DD FORM 1 NOV 55 214    REPLACES EDITION OF 1 JUL 52, WHICH IS OBSOLETE    ARMED FORCES OF THE UNITED STATES REPORT OF TRANSFER OR DISCHARGE    SR/OOR OR HQMC—?

Commanding Officer
Naval Reserve Naval Station Keflavik 1066
Naval Air Facility
Washington, DC  20390

NSKEF1066:WRH:ksb
19 Jul 1982

From:  Commanding Officer, NR NS Keflavik 1066
To:    UT1 JAMES RICHARD FISHER   , USNRR, ████████

Subj:  Meritorious Unit Commendation; authoriztion for the wearing of

Ref:   (A)  SECNAV letter NDBDM/DHS/ak Serial 399 of 6 May 1982

1.  In accordance with reference (a), you are hereby authorized to
wear the Meritorious Unit Commendation ribbon for your exceptional
performance during **unit active duty for training** between 8 July
1979 and 18 July 1980 which contributed significantly to the readiness
of Naval Station Keflavik in Iceland.

2.  My congratulations to you for a job well done.

W. R. Hendricks

Copy to:
Service record



DEPARTMENT OF THE NAVY
NAVAL RESERVE NAVAL STATION KEFLAVIK 1066
NAVAL AIR FACILITY
WASHINGTON, D.C. 20390

IN REPLY REFER TO
PSD:EBQ:jgg
1650
11 December 19?

From:   Commanding Officer, U. S. Naval Reserve, NS Keflavik 1066
T

        UT1 JAMES RICHARD FISHER
        
                                ,

Subj:   Meritorious Unit Commendation awarded to U. S. Naval
        Station, Keflavik

Ref:    (a) CNO ltr Ser 09B33/3U319307 dtd 3 June 1983

Encl:   (1) Citation

1.  Pursuant to reference (a), enclosure (1) is delivered with
pleasure.

2.  It is gratifying to see the excellence of the Naval Station,
Keflavik team formally recognized.  It is equally gratifying to
see that the caliber of this performance has been maintained as
we have excelled in meeting new challanges.

R. K. Maughlin

Copy to:
Service Record

# Department of the Navy



## Naval Reserve Meritorious Service Medal

JAMES RICHARD FISHER

Utilitiesman First Class

United States Naval Reserve

*Is issued this certificate in recognition of four years of faithful Naval Reserve Service.*

First Award

*Awarded for service completed on* April 6th, 1983

*Commanding Officer*

OPNAV 1650/6 (2/79)   SN 0107-LF-016-5030

The Secretary of the Navy takes pleasure in presenting the NAVY ACHIEVEMENT MEDAL to

UTILITIESMAN FIRST CLASS

JAMES RICHARD FISHER

UNITED STATES NAVAL RESERVE

for services set forth in the following
CITATION:

"For professional achievement in the superior performance of his duties while serving as the Leading Petty Officer of the Public Works Department of Naval Reserve Naval Station Keflavik 1066, NAF Washington, D.C., from 01 May 1986 to 01 May 1987. Petty Officer Fisher consistently performed his demanding duties in an exemplary and highly professional manner. His dedication to the leadership, motivation, and development of personnel within his department resulted in unusually high rates of retention and advancement. In addition, he effectively developed and implemented new procedures to monitor department personnel's progress toward advancement. His diligent efforts have been a major, direct contributor to enhanced training and readiness in the unit. Petty Officer Fisher's exceptional professional ability, initiative, and loyal dedication to duty reflect great credit upon himself and were in keeping with the highest traditions of the United States Naval Service."

For the Secretary of the Navy,



# DEPARTMENT OF THE NAVY

## THIS IS TO CERTIFY THAT
## THE SECRETARY OF THE NAVY HAS AWARDED THE

## NAVY ACHIEVEMENT MEDAL

### TO

*UTILITIESMAN FIRST CLASS JAMES RICHARD FISHER USNR*

### FOR

*MERITORIOUS ACHIEVEMENT*
*1 OCTOBER 1986 to 1 MAY 1987*

GIVEN THIS   13th   DAY OF JUNE   19 87



*Wilson F. Flagg*
*Rear Admiral*
*United States Naval Reserve*

OPNAV 1650/10 (11-81)
S/N 0107-LF-016-5050



**DEPARTMENT OF THE NAVY**
PERSONNEL SUPPORT ACTIVITY DETACHMENT
NAVAL AIR FACILITY
WASHINGTON, D.C. 20390 -5120

IN REPLY REFER TO
22a:DD;dt
1650
14 Sep 1985

From: Officer in Charge, Personnel Support Detachment, Naval Air Facility,
Washington, DC 20390-5120
To: UT1 James Richard FISHER, USNR-R, ███████ (NS KEFLAVIK-1066)
Via: (1) Commanding Officer, Naval Air Facility, Washington, DC
(2) Commanding Officer, NR NS KEFLAVIK-1066, Naval Air Facility,
Washington, DC

Subj: NAVAL RESERVE MERITORIOUS MEDAL

Ref: (a) SECNAVINST 1650.1 Series

1. You are hereby authorized your __1ST__ Naval Reserve Meritorious Medal.
You have earned this award by satisfactorily completing four consecutive years
as a member of the Naval Reserve, within the limits specified in reference (a).
You have completed these high standards of service by participation in the
Naval Reserve during Anniversary years __07 APR 79__ through __06 APR 83__.

2. You are congratulated for the attainment of this milestone in your Naval
career. It is noted that this could not have been accomplished without true
dedication and substantial sacrifice on your part. The medal can be worn with
pride and the knowledge that your contribution to the Naval Service during
this period is sincerely appreciated.

S. K. TIDD
By direction

14 Sep 1985

FIRST ENDORSEMENT

From: Commanding Officer, Naval Air Facility, Washington, DC
To: UT1 James Richard FISHER, USNR-R, ███████
Via: Commanding Officer, NR NAVSTA KEFLAVIK 1066

Encl: (1) Subject Medal

1. In accordance with authorization contained in basic correspondence, enclo-
sure (1) is forwarded with congratulations.

T. F. JONES
By direction

Copy to:
Service Record
OIC, PSD NAF WASH DC

COMMANDING OFFICER

U.S. NAVAL AIR STATION, KEFLAVIK

takes pleasure in

COMMENDING

CHIEF UTILITIESMAN
JAMES R. FISHER
UNITED STATES NAVAL RESERVE

for service as set forth in the following
CITATION:

"For outstanding professional achievement and superior performance while assigned on Active Duty for Training to U.S. Naval Air Station, Keflavik Iceland from February to March 1991. Chief Fisher's voluntary request to help the Public Works Department recover from a devastating winter storm that caused over $2.5 million in damage greatly improved the base's mission readiness and the quality of life of its residents. During this period Chief Fisher's enthusiasm, dedication to duty and technical competence made the work progress more efficiently and effectively, allowing the base to return to normal much faster than anticipated. This work included making permanent repairs to the main electrical power distribution system; repairing the fences at the A. T. Mahan High School, the Chapel of Light and the Puffin Child Care Center; and securing the canvas to Air Force Iceland's War Reserve Material structure. He also helped correct a longstanding drainage problem at the Chapel of Light and improved the walkway to the main entrance to the USO. Chief Fisher's distinctive and creative accomplishments, sustained initiative, and unselfish dedication to duty reflected great credit upon himself and were in keeping with the highest traditions of the United States Naval Service."

J. I. MUNSTERMAN

REPRODUCED AT GOVERNMENT EXPENSE



**DEPARTMENT OF THE NAVY**
PERSONNEL SUPPORT ACTIVITY DETACHMENT
NAVAL AIR FACILITY
WASHINGTON, D.C. 20390

IN REPLY REFER TO
22a:DD:dt
1650
25 May 89

From: Officer in Charge, Personnel Support Detachment, Naval Air Facility, Washington, DC

To:    UTC JAMES R. FISHER, USNR, ███████9

Via:   (1) COMMANDING OFFICER, NAF WASHINGTON DC
       (2) Commanding Officer, NR KEFLAVIC 0166

Subj:  ARMED FORCES RESERVE MEDAL

Ref:   (a) SECNAVINST 1650.1 Series

1. You are hereby authorized the Armed Forces Reserve Medal. You have earned this award by completing ten years of honorable satisfactory service as a member of the Reserve Component of the Armed Forces, within the limits specified in reference (a). You have completed these high standards of service by participation in the Naval Reserve during anniversary years 07APR79 through 06APR89.

2. You are congratulated for the attainment of this milestone in your Naval career. It is noted that this could not have been accomplished without true dedication and substantial sacrifice on your part. The medal can be worn with pride and the knowledge that your contribution to the Naval service during this period is sincerely appreciated.

T.M. BARTLETT
By direction

---------------------------------------------------------------

1650
10
3 JUN 1989

FIRST ENDORSEMENT

From: Commanding Officer, Naval Air Facility, Washington, DC
To:   UTC James R. Fisher, USNR, ███████████
Via:  Commanding Officer, NR NAVSTA KEFLAVIK 1066

Subj:  ARMED FORCES RESERVE MEDAL

1. Forwarded with congratulations.

T. F. ALLEN
By direction

Copy to:
Service Record



# DEPARTMENT OF THE NAVY
## NR-NAVAL STATION KEFLAVIK 1066
## NAVAL AIR FACILITY
## WASHINGTON, D.C. 20396-5130

1650
Ser 031
11 Jun 1989

SECOND ENDORSEMENT on OIC, PSD NAF Washington DC ltr of 25 May 89

From:  Commanding Officer, NR NS KEFLAVIK 1066
TO:    UTC James R. Fisher, USNR, ███████████

Subj:  ARMED FORCES RESERVE MEDAL

1.  Forwarded with congratulations.

F. F. HUGHES

Copy to:
Service Record

# Department of the Navy



# Naval Reserve Meritorious Service Medal

JAMES RICHARD FISHER

UTILITIESMAN FIRST CLASS

UNITED STATES NAVAL RESERVE

*Is issued this certificate in recognition of four years of faithful Naval Reserve Service.*

Second Award

*Awarded for service completed on* April 6th, 1987

*Commanding Officer*

OPNAV 1650/6 (2/79)   SN 0107-LF-016-5030



**DEPARTMENT OF THE NAVY**
PERSONNEL SUPPORT ACTIVITY DETACHMENT
NAVAL AIR FACILITY
WASHINGTON, D.C. 20390

*87may26*

IN REPLY REFER TO
1650
PSDNAF/N22

From: Officer in Charge, Personnel Support Activity Detachment, NAF
To:   UT1 JAMES R FISHER, USNR-R, 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
Via:  COMMANDING OFFICER, NR NS KEFLAVIK 1066, NAF WASH DC 23096

Subj: NAVAL RESERVE MERITORIOUS SERVICE MEDAL(SECOND & SUBSEQUENT AWARDS)

Ref:  (a) SECNAVINST 1650.1 Series

1. You are hereby authorized your   SECOND   Naval Reserve Meritorious
Service award.  You have earned this award by satisfactorily completing
four consecutive years as a member of the Naval Reserve, within the limits
specified in reference (a).  You have completed these high standards of ser-
vice by participation in the Naval Reserve during anniversary years
  07APR83          through   06APR87          .

2. You are congratulated for the attainment of this milestone in your
Naval career.  It is noted that this could not have been accomplished
without the true dedication and substantial sacrifice on your part.  You
are authorized to wear one bronze star for each subsequent award received.
This award may be worn with pride and the knowledge that your contribution
to the Naval Service during this period is sincerely appreciated.

D J KRAEGER, PN1
By direction

-----------------------------------------------------------------------
                                                          1650

FIRST ENDORSEMENT

From:
To:


Encl: (1) Award Certificate

1. In accordance with authorization contained in basic correspondence,
enclosure (1) is forwarded with congratulations.


Copy to:
File
Service Record

# *Department of the Navy*



# *Naval Reserve Meritorious Service Medal*

JAMES RICHARD FISHER
UTILITIESMAN SENIOR CHIEF
UNITED STATES NAVAL RESERVE

*Is issued this certificate in recognition of four years of faithful Naval Reserve Service.*

FOURTH AWARD

*Awarded for service completed on* 95 APR 06

*Commanding Officer*

OPNAV 1650/6 (2/79)    SN0107-LF-016-5031



**DEPARTMENT OF THE NAVY**
NAVAL AIR FACILITY
WASHINGTON, D.C. 20390

IN REPLY REFER TO
RHH:bff
1650
Ser
9 AUG 1981

From: Commanding Officer, Naval Reserve, Naval Station, Keflavik 1066
To:   UT1 James R. FISHER, USNR-R, ██████████9

Subj: Letter of Appreciation

Encl: (1)  Commissioned Officer Mess Open, Letter of Appreciation
      (2)  First Class Association of VP-23, Letter of Appreciation
      (3)  Windbreaker Club, Letter of Appreciation
      (4)  Servemart, Letter of Appreciation

1.  It is with distinct pleasure that I take this opportunity to pass my sincere
appreciation on behalf of NS KEF for your efforts during your ACDUTRA
period from 30 May to 13 June 1981.

2.  The improvements and repairs that you have made in the Officer's Club,
Windbreaker Club, VP-23 First Class Lounge, and the Servemart (as reflected
in enclosure 1-4), have greatly enhanced the habitability morale, and
working environment of your fellow active duty shipmates.  The appreciation
reflected in the enclosures is testimony to the camaraderie and cooperation
that exists as a result of your stay.

3.  Again, I express my sincere thanks and appreciation for the professionalism
and dedication that you have displayed here during your ACDUTRA.

R.H. HARRISON



**DEPARTMENT OF THE NAVY**
U.S. NAVAL AIR STATION
FLEET POST OFFICE
NEW YORK 09571- 0315

1600
Ser 18/  1171
8 AUG 1986

From:  Commanding Officer, U. S. Naval Air Station, Keflavik
To:    UT1 James R. Fisher, USN, ███████
Via:   Commanding Officer, NR NASKEF 1066, Naval Air Facility
       Washington, D. C. 20390-5130

Subj:  LETTER OF APPRECIATION

1.  During the period of 30 June 1986 to 11 July 1986 you were
assigned to NAS Keflavik Security Department.  With no prior
training in the corrections field you quickly intergrated
yourself with the Detention Facility Staff.  Your professional
and enthusiastic attitude helped you to quickly understand and
accept the responsiblities of a prisoner escort.  Your dedication
to duty made you a valuable member of the Detention Facility
Staff.  I would like to express my sincere thanks for a job well
done.

G. T. LLOYD



**DEPARTMENT OF THE NAVY**
NR-NAVAL STATION KEFLAVIK 1066
NAVAL AIR FACILITY
WASHINGTON, D.C. 20390-5130

1600
Ser 18/1171

SEP 1 3 1986

ENDORSEMENT

From:   Commanding Officer, NR NS KEFLAVIK 1066, Naval Air Facility
        Washington, D. C. 20390-5130
To:     UT1 James R. Fisher, USNR

Subj:   LETTER OF APPRECIATION

1.  Forwarded with pleasure!

2.  It is through efforts like yours that NAS Keflavik personnel truly
enjoy and look forward to our units arrival in Iceland.  The goals you
achieved, the training you received and the professional support you sub-
sequently provided enhanced the "One Navy Concept" and strengthened the
Navy's readiness.  Keep up the good work!

                                    W. F. FLAGG



# DEPARTMENT OF THE NAVY
U.S. NAVAL AIR STATION
FLEET POST OFFICE
NEW YORK 09571- 0315

1650
Ser 10/1455
25 July 1988

From:  Commanding Officer, U.S. Naval Air Station, Keflavik
To:    UT1 James R. Fisher, USNR, ███████████
Via:   Commanding Officer, NR NS Keflavik 1066, NAF, Washington,
       DC   20396-5130

Subj:  LETTER OF APPRECIATION

1.  It is with great pleasure that I extend my sincere
appreciation for your dedicated service on 6 and 7 July 1988,
while working on the Finance Section of the Post Office.  Your
courteous service, extensive knowledge, and willingness to work
extra hours helped to ensure that the new counter in the Finance
Section of the Naval Air Station Post Office was installed
properly and professionally.

2.  Your exceptional performance and workmanship are most
exemplary and are greatly appreciated by all of the personnel
stationed at Naval Air Station, Keflavik, Iceland.  Please accept
my personal thanks for a job "Well Done".

                              Richard E. Goolsby

Copy to:
Service Record



# US Naval Air Station
# Keflavik, Ireland

## THE PUBLIC WORKS OFFICER
### Takes Great Pleasure In Presenting To

UTCS JAMES R. FISHER, USNR,  9

# A Letter Of Appreciation
## In Recognition For Services As Set Forth Herein

"Please accept my sincere appreciation for your dedicated service and your support of the Base Carnival Committee in the preparations for the Annual Fourth of July Carnival. Your assistance to the voluntary organizations that operated the carnival events was superb. Your participation in the organization allowed quick set-up of over 90 booths, provided temporary power to these booths thru 1.5 miles of temporary wiring, erected five sections of stages used by entertainers, and the quick breakdown and preservation of this material for future use. Thanks to you and your "Can Do Spirit", this critical work was accomplished in record time. The carnival was a great success and it was volunteers, such as you, that made it happen. Thank you for a job exceptionally "well done".

D. L. Grigsby

D. L. GRIGSBY
CDR, CEC, USN
21 JULY 1992



# OUTSTANDING PERFORMANCE

NR NAS KEFLAVIK 1066 acknowledges
the outstanding accomplishments of

## UTCS James Fisher

in support of the July 1992
Command Inspection.
Bravo Zulu for a job well done.

C.S. Obst

August 17, 1992

October 2, 1980

Buildings Manager
White House Area (WPFX)

Letter of Commendation

Mr. James Fisher
Plumbing Shop
White House Area (WPFX)

I am pleased to forward to you this letter of commendation from Mr. Robert
D. Armstrong, Buildings Manager of the Commerce Field Office, for work on the ~~very~~
special and critical project.

Although, it is expected that employees accomplish a particular job to the best
of thier ability, it is most gratifing to see such excellent work and in this
case it is well deserving of a commendation.

Please be assured that a copy of this letter will be placed in your official
personnel folder.

(Signed) C. B. Respass

CHARLES B. RESPASS
Buildings Manager
White House Area (WPFX)

cc:  Reading/ Official file WPFX)
     W/H subject WPFX
     Official Personnel WPFX
     P Gentilcore WPFX

WPFX gentilcore: dlc                    3675              10-2-80

SEP 30 1980

Mr. James Fisher

White House Field Office

I would like to take this opportunity to express our appreciation for the fine response you made to our appeal for additional manpower to complete a critical project.

Your help allowed us to meet our revised deadline and to turn over a piece of first rate work that reflected well on not only yourselves but on the General Services Administration as well.

All of us here in the Commerce Field Office recognize the effort that you put forth and extend our sincere thanks.

Signed Robert D. Armstrong CPM

**ROBERT D. ARMSTRONG, CPM**
**Buildings Manager**
**Commerce Field Office**



# General Services Administration

## Suggestion Award Certificate

JAMES FISHER

*In official recognition and with appreciation for the contribution of a beneficial idea which has improved operations*

Dated at ___WASHINGTON, DC___ on ___JUNE 2,___ 19 _81_

ASSISTANT REGIONAL ADMINISTRATOR, PBS

SA WASH DC 60-3258

GSA FORM 1514
OCTOBER 1959

 General National
Services Capital
Administration Region    Washington, DC 20407

Date    :    February 25, 1983

Reply to
Attn of :    Buildings Manager, White House District (WPFX)

Subject:    Letter of Commendation

To     :    Mr. J. Fisher
Plumbing Shop
White House District

I want to personally thank you for the outstanding job you performed
during the snow blizzard of February 11, 1983.

Your unselfish attitude by responding immediately to emergency
work demonstrates your dedication to duty and loyalty to G.S.A.

The agencies that occupy our buildings seldom realize the good job that
G.S.A. performs because much of our work is done behind the scenes.
I just want to let you know that your dedication and efforts are not
unnoticed.

Again, thank you and keep up the good work.

A copy of this letter will be placed in your official personnel
folder.


CHARLES B. RESPASS
Buildings Manager
White House District



General
Services
Administration
National Capital
Region

# Citation for
# Outstanding Attendance

JAMES FISHER

You are to be commended for the
outstanding attendance record
you achieved for the year     1982

FEB   1 1983
Awarded

Manager, White House District



General
Services
Administration
National Capital
Region

# Citation for
# Outstanding Attendance

JAMES R. FISHER

You are to be commended for the
outstanding attendance record
you achieved for the year   1983

Manager, White House District                                    Awarded

General Services Administration
National Capital Region
Washington, DC 20407



APR 3 0 1984

Mr. James R. Fisher
White House District

Dear Mr. Fisher:

Your suggestion NCR-84-40, submitted on March 8, 1984, concerning
"Improved safety working conditions" has been adopted.

I am pleased to inform you that a cash award in the amount of $50 has
been approved. This amount, of course, is subject to income tax. On
behalf of the National Capital Region, I wish to express appreciation for
your interest in effecting improvement in our operations. Keep your
suggestions coming in!

A copy of this letter will be placed in your personnel folder.

Sincerely,

JAMES G. WHITLOCK
Assistant Regional Administrator
Office of Public Buildings and Real Property

UNITED STATES
GENERAL SERVICES ADMINISTRATION



*Performance Award*

IS PRESENTED TO

*James R. Fisher*

IN RECOGNITION OF

superior performance during the
recently completed rating period



_____  5·1·81
Date



General
Services
Administration

Region 3

Citation for
Perfect Attendance

JAMES FISHER

You are to be commended for
the perfect attendance record
you achieved for the year    1985

Manager, White House District

Awarded



General Services Administration
National Capital Region
Washington, DC 20407


October 28, 1986



James Fisher, Pipefitter, WG-10

Dear Mr. Fisher:

It is with great pride that I forward to you the attached letter
from Mr. Riley to Mr. Golden.  Without your untiring support and
dedication to duty, the completion of this project could not have
been possible.  You and your co-workers have proven once again that
GSA has on its staff some of the very best craftsmen in their
respective fields.

I want to pass on my own thanks for a job well done and want you to
know that your every effort toward this project and all future
projects is greatly appreciated.

                              Sincerely,

                              Ben D. Payne
                              Buildings Manager
                              White House Field Office


Attachment

THE WHITE HOUSE

WASHINGTON

September 17, 1986

*Terry*

Dear Mr. Golden:

During the President's recent trip to
California, the White House Field Office,
under the direction of Ben Payne, under-
took the job of completely renovating the
White House Staff Mess kitchen area
including removing old kitchen equipment
and installing new replacement equipment.
A tremendous amount of work was done in a
relatively short period of time due to
the expertise, cooperative spirit and
can-do attitude of Ben and his superb
staff of supervisors, engineers and
craftsmen.  I am delighted with the work
that was accomplished and the opportunity
this gives us to provide an even finer and
more responsive support to the President
and his staff.

Sincerely,

RICHARD RILEY
Director
White House Military Office

P.S.
This was very much appreciated - Many thanks.

The Honorable Terence C. Golden
Administrator
General Services Administration
18th and F Streets, N.W.
Washington, DC   20405



General
Services
Administration
National Capital
Region

Citation for
Perfect Attendance

James R. Fisher

You are to be commended for
the perfect attendance record
you achieved for the year    1987

Buildings Manager, White House Field Office          Awarded

UNITED STATES
GENERAL SERVICES ADMINISTRATION



IS PRESENTED TO

*James R. Fisher*

IN RECOGNITION OF

superior performance during the
recently completed rating period



 

Date

THE WHITE HOUSE

WASHINGTON

January 6, 1989

Dear James:

My years in public office have shown me time and time again that some of the most important jobs in government are done by men and women who never seek or get the attention to which they are entitled. The dedicated people of the General Services Administration who work at the White House fit this description exactly.

For the past eight years, I've been a firsthand witness to the seemingly limitless array of duties GSA staff carry out in the White House complex. You have been at the ready at all hours of the day and night to ensure the successful completion of the multiple missions of the modern Presidency. From the provision of supplies to maintenance of the buildings that house the Executive offices to the painstaking preservation of Administration records, GSA personnel have been a key component in every successful initiative we've undertaken. I am proud to have this opportunity to commend each of you individually for your labors and for your devotion to country. You represent and serve your fellow citizens with distinction.

This year marks the 40th anniversary of the establishment of GSA by Congressional legislation. When Harry Truman signed the Act creating your agency, he hailed it as a major step in maximizing "the efficiency and economy of governmental operations." Four decades later, I can say with two terms' worth of experience that you've proved yourselves up to the job.

From the bottom of my heart, and on behalf of the American people, thank you for all you've accomplished. God bless you.

Sincerely,

Ronald Reagan

Mr. James R. Fisher
White House Field Office
General Services Administration
Washington, D.C.   20500

**BLAIR HOUSE**
THE PRESIDENT'S GUEST HOUSE
1651–1653 Pennsylvania Avenue, N.W.
Washington, D.C. 20503

MEMORANDUM

TO        : GSA/WPFXW - William N. Cobbs

FROM      : S/CPR/BH - Samuel Castleman

DATE      : August 10, 1989

SUBJECT   : Commendations to workers in the GSA White House
            Field Office Plumbing Shop

In late June, Blair House experienced another major plumbing
problem.  On this occasion, the dialectic union in the piping
to the fan coil units in the security command post burst.  At
the time of the rupture, a plumbing contractor was tasked with
replumbing the fan coil units.  The contractor did not have
the familiarity with the building nor this recurring problem,
so an urgent request for help was made to your plumbing shop.
Your plumbing shop foreman, Bob Fowler, understanding both the
urgency of our request (the arrival of the President's foreign
guest was only days away) and the delicacy of the repair work
to be performed, immediately dispatched James Fisher, Timothy
Ferguson, and Carroll Williams to make the repair.

Each of the above men performed their jobs with all the skill
and competence expected of the best in their trade.  However,
I would like to single out Mr. Fisher and Mr. Ferguson who
stayed long past their normal quitting time and took the
initiative to improvise on finding parts so that the job would
be completed that same evening.  By noon the next day one
would not have suspected that 24 hours earlier there had been
such a diaster.  Unfortunately, this type of dedication in
todays workplace is more and more rare.

Thank you for your continued personal support of the
operations at Blair House.  Clearly your leadership in this
regard is manifested in the attention shown to us by the
various shops that assist us.


cc. BValentiner
    CParker
    JMorris



General
Services
Administration
National Capital
Region

# Citation for Perfect Attendance

JAMES R. FISHER

You are to be commended for
the perfect attendance record
you achieved for the year  1990

_William N. Cobbs_

6-7-91

Awarded

UNITED STATES
GENERAL SERVICES ADMINISTRATION



IS PRESENTED TO

*James Fisher*

IN RECOGNITION OF

superior performance during the
recently completed rating period





*Thomas M. Sherman* 6/5/90

Date



**General Services Administration**
**National Capital Region**
**Washington, DC 20407**



JUL 3 0 1990

MR. JAMES FISHER
WG-10, PIPEFITTER
WHITE HOUSE FIELD OFFICE

Dear Mr. Fisher

Though long in getting to you from the sender, attached you will
find a copy of a letter sent to Mr. Cobbs your performance of
duties in a near emergency situation.

As you well know, GSA is normally the last to be recognized as
having done a good job.  Needless to say, it is with great pride
that I forward this letter to you.  It is only through people
like you and your coworkers that we can accomplish our mission.
It is perfectly clear that if you had not taken the initiative to
assure job completion, severe damage could have been done to one
of our nations historical structures.

I wish to thank you for a job well done and encourage you to
maintain your positive can do attitude.

JETER A. MORRIS
ASSISTANT BUILDINGS MANAGER
WHITE HOUSE FIELD OFFICE

attachment

THE WHITE HOUSE
WASHINGTON

MEMORANDUM

TO    : GSA/WPFXW - William N. Cobbs

FROM  : J. BONNIE NEWMAN  *Bonnie Newman*
        Assistant to the President for Management and Administration

SUBJ  : COMMENDATION, LETTER OF


On May 31, 1990 the main kitchen at the White House experienced a major
plumbing problem. As final preparations for the State Dinner honoring
His Excellency, The President of the Union Of Soviet Socialist Republics,
Mikhail Gorbachev, and Mrs. Gorbachev , were greatly reduced an urgent
request for help was made to your plumbing shop. Your plumbing shop was
closed but Assistant Building Manager J. Morris, understanding the urgrncy
of our request, recalled James Fisher.

Upon his arrival Mr. Fisher wasted no time in assessing the problem but
immediately entered the pipe tunnel and shut off the water to the busted
pipe. In less than thirty minutes repairs had been made and water service
was restored. Mr. Fisher performed his job with all the skill and
competence expected of one of GSA's best.

The State Dinner, which could have been a diaster, was a hugh success
thanks in part to the knowledge and efforts of Mr. Fisher. Thank you for
your continued support and attention shown to us by the craftmens in the
various shops that assist us. They are truly GSA's finest.



**General Services Administration**
**National Capital Region**
**Washington, DC 20407**



MR. JAMES FISHER
WG-10 PIPEFITTER
PLUMBING SHOP
WHITE HOUSE FIELD OFFICE


Dear Mr. Fisher

Attached you will find a copy of a letter sent to me regarding
your performance of duties in an emergency situation.

As you well know, GSA Personnel are normally the last to be recognized
for having done a good job. Therefore, it is with great pride that I
forward this letter to you. It is perfectly clear that once again you
have taken the initiative to assure a completed job thereybe aborting
a diaster at a State Dinner.

I wish to thank you for a job well done and encourage you to maintain
your positive attitude.


William Cobbs
Building Manager
White House Field Office

UNITED STATES
GENERAL SERVICES ADMINISTRATION



*Performance Award*

IS PRESENTED TO

*James R. Fisher*

IN RECOGNITION OF

superior performance during the
recently completed rating period



*Thomas M. Sherma*

JUN 2 5 1993

Date